# UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF FLORIDA PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19-md-2885 |
| This Document Relates to: | Judge M. Casey Rodgers Magistrate Judge Hope T. Cannon |
| BRANDON CANUP, | RESPONSE TO MOTION TO DISMISS |
| v. | Civil Action No: 8:20-cv-14021-MCR-HTC |
| 3M COMPANY, 3M OCCUPATIONAL SAFETY LLC, AEARO HOLDING LLC, AEARO INTERMEDIATE LLC, AEARO LLC, and AEARO TECHNOLOGIES LLC. | |

## PLAINTIFF BRANDON CANUP'S RESPONSE AND MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

COMES NOW Plaintiff Brandon Canup and files this Response and Memorandum in Opposition to Defendants' Motion to Dismiss, and would respectfully show the Court as follows:

1

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Local Rule 7.1(F), the undersigned certifies that, based on the Word Count function in Microsoft Word, this Motion contains 4,059 words, inclusive of headings, footnotes, and quotations.

# TABLE OF CONTENTS

LOCAL RULE 7.1(F) CERTIFICATION…………………………..……….....2

TABLE OF CONTENTS……………………………………..……………....3

TABLE OF AUTHORITIES………………………………….…….……….4

LEGAL STANDARD………………………………………...……….…….7

ARGUMENT……………………………………………………………....…7

1. Plaintiff's Factual Statements Concerning Hearing Loss
do not Violate the Court's Order………………………………………10

2. Count IX, the Fraudulent Concealment Claim, Plaintiff's
Pleading Indicates that Defendants Owed a Duty to
Plaintiff to Disclose…………………………………………………………11

    A. Defendants made a partial disclosure that created a false
    impression………………………………………………….…………....11

    B. Defendants discovered new information that made their
    earlier representation untrue or misleading…………………………11

    C. Defendants voluntarily disclosed some information, creating
    a duty to disclose the whole truth……………………...………….....12

3. The Texas DTPA does <u>Not</u> Bar Plaintiff's DTPA Personal
 Injury Claim, Which Should Stand…………………………………...14

4. Plaintiff More Than Adequately Pled Reliance,
Therefore Counts VII, VIII, IX, and X, All of Which
Concern Misrepresentation, Should Stand………………….……….16

5. No Response to Unjust Enrichment, Loss of Consortium,
and Negligence Per Se……………………………………….…….....18

CONCLUSION………………………………………….……….18

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940 (2009)…………………………………..8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007)……………...………. 6

*Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*,
572 S.W.3d 213, 220 (Tex. 2019)………………………………………10, 11, 14

*BP Am. Prod. Co. v. Marshall*, 288 S.W.3d 430, 444-46 (Tex. App.—
San Antonio 2008), rev'd on other grounds, 342 S.W.3d 59 (Tex. 2011)….10, 14

*Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 384
(Tex.App.—Houston [1st Dist.] 2010, pet. denied…………………………10, 14

*Hurst v. Sears, Roebuck & Co*., 647 S.W.2d 249 (Tex. 1983)…………………15

*Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)…………………………7

*Karage v. First Advantage Corp.*, 2010 WL 1062601, at *2
(N.D. Tex. Mar. 22, 2010) ……………………………………………...…7

*Keller Industries, Inc. v. Reeves*, 656 S.W.2d 221 (Tex.App.—
Austin 1983, writ ref'd
n.r.e.)……………………………………………………………………15

*Lesikar v. Rappeport*, 33 S.W.3d 282, 299 (Tex.App.—Texarkana
2000, pet. denied)……………………………………..……………………10, 14

*Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232, 244 (5th Cir. 2009)……...…6

*Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)………..…6

*Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 562
(Tex. 2019)……………………………………………………………………..10

*Neitzke v. Williams*, 490 U.S. 319, 327 (1989)………………………………6

*Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004)………..……6, 7

*Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4h Cir. 1992)………..7

*Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners*,
237 S.W.3d 379, 385-87 (Tex.App.—Houston 14th Dist. 2007, no pet.)…10, 14

## **Statutes and Rules**

Fed. R. Civ. P. 8(a)……………………………………………………………8

Fed. R. Civ. P. 12(b)(6)……………………………………………………6

Tex. Bus. & Com. Code § 17.49(e)…………………………………..…….. 15

Tex. Bus. & Com. Code §§17.50(b), (h)……………………………..…15, 16

## LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) is 'viewed with disfavor and is rarely granted.'"[1] "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."[2] "The complaint is liberally construed in the plaintiff's favor, and all well-pleaded facts in the complaint are taken as true."[3]  Moreover, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"[4]  "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."[5]  A claim is facially plausible when the plaintiff pleads facts that allow the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[6]

"The determining issue is not whether the plaintiff will ultimately prevail on

---

[1] *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004) (quoting *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)).

[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

[3] *Id.*; *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232, 244 (5th Cir. 2009) (reiterating that the court "must accept as true the well-pleaded factual allegations in the complaint during the pleadings stage" and "must also draw all reasonable inferences in the plaintiff's favor"); *cf. Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations.").

[4] *Twombly*, 550 U.S. at 556.

[5] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).

[6] *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940 (2009).

the merits, but whether he is entitled to offer evidence to support his claim."[7]
"Therefore, th[e] court will not dismiss a plaintiff's claim, 'unless the plaintiff will
not be entitled to relief under any set of facts or any possible theory that he could
prove consistent with the allegations in his complaint.'"[8]  Moreover, "a well-
pleaded complaint may proceed even if it strikes a savvy judge that actual proof of
those facts is improbable, and 'that a recovery is very remote and unlikely.'"[9]
"[W]hen a complaint adequately states a claim, it may not be dismissed based on
a district court's assessment that the plaintiff will fail to find evidentiary support
for his allegations or prove his claim to the satisfaction of the factfinder."[10]

## ARGUMENT

**1.    Plaintiff's Factual Statements Concerning Hearing Loss do not Violate
the Court's Order.**

On April 17, 2024, this Court ordered Plaintiff to file an Amended
Complaint, with instructions to not "use this opportunity to add new allegations
or causes of action to [his] Complaint[]."  [ Docket No. 15 at 2.]    As an initial

---

[7] *Priester v. Lowndes County*, 354 F.3d at 418; *Cf. Republican Party of N.C. v. Martin*, 980 F.2d
943, 952 (4h Cir. 1992) (holding that a motion to dismiss under Rule 12(b)(6) "does not resolve
contests surrounding the facts, the merits of a claim, or the applicability of defenses"); *Karage
v. First Advantage Corp.*, 2010 WL 1062601, at *2 (N.D. Tex. Mar. 22, 2010) ("A motion to
dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; it does not resolve contested
issues of fact, the merits of a claim, or the applicability of defenses."), *citing Martin*, 980 F.2d
at 954.
[8] *Id.* (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).
[9] *Twombly*, 550 U.S. at 556.
[10] *Twombly*, 550 U.S. at 563 n.8.

matter, Defendants argue that factual assertions of hearing loss and a loss of consortium amount to claims, but they do not. "Claim" is described in the Federal Rules of Civil Procedure to mean essentially the same as a "cause of action." To state a "claim", a complaint must contain facts that, accepted as true, state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); see Fed. R. Civ. P. 8(a).

Under the (relatively) new *Iqbal* Federal pleading standards, a Plaintiff must state facts more specifically than in the pre-*Iqbal* era. *See id*. A Plaintiff must plead more 'meat on the bones' than was required before the *Iqbal* case. Thus, it would be nearly impossible for Plaintiff to have not added more facts and still comply with the *Iqbal* standard with regard to the Amended Complaint. Without 'beefing up' the facts, the Amended Complaint would essentially amount to the same as the Original Complaint, a result which could not have been the Court's intent. In any case, facts concerning hearing loss and loss of consortium do not amount to new "claims." *Iqbal*, 556 U.S. at 679; see Fed. R. Civ. P. 8(a).

Also, Defendants readily admit in their Motion to Dismiss: "the disclosures Plaintiff provided to Defendants as required by CMO 57 show that Plaintiff seeks $2 million in compensatory damages for ... hearing loss, in

addition to the $2 million in compensatory damages he seeks for alleged tinnitus."
[Docket No. 24 at p. 4]. Because Defendants admittedly already had notice of
the hearing loss allegations and damages, the further description of Plaintiff's
hearing loss in the Amended Complaint cannot be rightfully considered a "new
allegation." [Docket No. 24 at p. 4].

Defendants also argue that Plaintiff's Amended Complaint somehow
violates Federal Rule of Civil Procedure 15(a)(2) ("[A] party may amend its
pleading only with the opposing party's written consent or the court's leave.").
This argument is easily disposed of. The Court explicitly ordered Plaintiff to
amend his complaint, which is precisely what he did. [Docket No. 15].

While Plaintiff had known that there was a slight shift in his hearing
threshold, he was not certain of the details and whether a certain decibal amount
of hearing loss was required. A layman cannot be expected to understand the
intricacies of hearing loss, including his own hearing loss. That is the domain of
experts, and Plaintiff timely disclosed his experts, including Dr. Knox who
explained the hearing loss as well as the tinnitus. Before being able to discuss his
medical records with a renowned audiology doctor, all Plaintiff knew about the
details of his hearing problems was what the Army and the VA told him, which
was not much. Further, the offer made to Plaintiff while in Florida was for slight
hearing loss. The hearing loss, including the medical records and expert report of

Dr. Knox was previously produced, was there for Defendants' review, was not "new" as of the Amended Complaint, and can give no surprise to Defendants.

**2.     Count IX, the Fraudulent Concealment Claim, Plaintiff's Pleading Indicates that Defendants Owed a Duty to Plaintiff to Disclose.**

Defendants argue that Plaintiff's Amended Complaint does not contain any allegations that Defendants owed him a duty to disclose information about the CAEv2.  Defendants misread the Amended Complaint.  Defendants are correct in stating that "a failure to disclose information does not constitute fraud unless there is a duty to disclose the information." *Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 562 (Tex. 2019).

However, a duty to disclose may also arise "when the defendant: (1) discovered new information that made its earlier representation untrue or misleading; (2) made a partial disclosure that created a false impression; **or** (3) voluntarily disclosed some information, creating a duty to disclose the whole truth." *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 220 (Tex. 2019) (emphasis added); *see also Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 384 (Tex.App.—Houston [1st Dist.] 2010, pet. denied); *BP Am. Prod. Co. v. Marshall*, 288 S.W.3d 430, 444-46 (Tex. App.—San Antonio 2008), rev'd on other grounds, 342 S.W.3d 59 (Tex. 2011); *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners*, 237

S.W.3d 379, 385-87 (Tex.App.—Houston 14th Dist. 2007, no pet.); *Lesikar v. Rappeport*, 33 S.W.3d 282, 299 (Tex.App.—Texarkana 2000, pet. denied).

In his Amended Complaint, Plaintiff pled multiple allegations satisfying each of the *Bombardier Aerospace Corp.* duty to disclose three (3) factors, any one of which is sufficient to establish Defendants' duty to disclose. *Id.* In each cause of action, Plaintiff incorporates by reference all paragraphs above and below in the Amended Complaint as if fully stated therein.

Plaintiff pled the following in his Amended Complaint (listed by the 3 *Bombardier Aerospace Corp.* factors—in bold):

### A.  Defendants made a partial disclosure that created a false impression.

- Mr. Berger of 3M touted the Dual-Ended Combat Arms Earplug to civilians as "ideal for outdoor shooting and hunting" because the device provided "good protection" for "thousands of rounds fired at indoor reverberant ranges." [Amended Complaint ¶56].

- Defendants have displayed the 0 NRR on the packaging of the Dual-Ended Combat Arms Earplug ever since they began supplying the device to civilians and military personnel. [Amended Complaint ¶117].

- Worse, Defendants touted the obviously invalid 0 NRR as a benefit of the open end of the device, routinely representing that soldiers and civilians would be able to hear quiet, close-range conversation despite being protected from louder, harmful noises.

[Amended Complaint ¶119].

**B.    Defendants discovered new information that made their**

**earlier        representation untrue or misleading.**

- Without informing Plaintiff or the United States military,
  Defendants brazenly and perniciously inflated the -2 NRR to a 0
  NRR.  [Amended Complaint ¶116].

- Defendants also falsely marketed, advertised, and promoted the
  open end of the Dual-Ended Combat Arms Earplug to civilians and
  the United

- States military as providing adequate level-dependent hearing
  protection    with a 0 NRR.  [Amended Complaint ¶158].

- However, Defendants' initial test revealed that the NRR of the open end
  of the Dual-Ended Combat Arms Earplug was -2, while later tests
  generated NRRs ranging from -1 to 6, leaving Defendants entirely
  "unsure" about the true NRR for the open end of the device.
  [Amended Complaint ¶159].

- Defendants thus falsely represented that the Dual-Ended Combat Arms
  Earplug provided civilians and military personnel with two different
  hearing protection options for providing adequate hearing protection
  regardless of which end of the plug is used.  [Amended Complaint
  ¶160].

- This was one alleged benefit that Plaintiff and the United States
  military relied on in purchasing and/or using the Dual-Ended Combat
  Arms Earplug.  [Amended Complaint ¶161].

**C.    Defendants voluntarily disclosed some information, creating a**

**duty to disclose the whole truth.**

- Civilians and military personnel, including Plaintiff, relied on
        Defendants' representations that the Dual-Ended Combat Arms

- Earplug is safe, effective, and provides two different options for

adequate hearing attenuation and/or protection depending upon which                                   end of the device is inserted into the user's ear. [Amended Complaint                          ¶57]

- Defendants have displayed this manipulated 22 NRR on the packaging of the Dual-Ended Combat Arms Earplug ever since this device was first made available to civilian consumers and military personnel.  [Amended Complaint ¶132]

- Defendants, however, never warned civilians, military personnel, or the United States military that they obtained the 22 NRR by testing the Dual-Ended Combat Arms Earplug on an unrepresentative panel of subjects, that they manipulated the test data of those unrepresentative subjects, or that they reconfigured the device by folding back the flanges of the open end before inserting the closed end of the device into the ear canals of the test subjects.  [Amended Complaint ¶136]


- Defendants also did not adequately warn or instruct users, including Plaintiff, how to wear and insert the Dual-Ended Combat Arms Earplug in order to achieve the NRR ratings that Defendants advertised and       promoted over the years.  [Amended Complaint ¶166].

- Although Defendants issued standard instructions for "proper use" of the Dual-Ended Combat Arms Earplug, the instructions did not instruct             all users to fold back the opposing flanges of the earplug before                          inserting the device into their ears.  [Amended Complaint ¶167].

- Defendants' standard instructions also did not warn users that the unrepresentative panel of ten subjects who tested the Dual-Ended Combat Arms Earplug in Test 213017 did not follow standard instructions for "proper use," but rather folded back the flanges of the opposite end of the earplug before inserting it into their ears. [Amended Complaint ¶168].

- Nor did Defendants' standard instructions for "proper use" inform users that the Dual-Ended Combat Arms Earplug would not provide a 22 NRR if they did not fold back the opposing flanges on the open end of the device before inserting the closed end of the device into their ears.  [Amended Complaint ¶169]

- Instead, Defendants' standard instructions simply directed users, such as Plaintiff, to insert the Dual-Ended Combat Arms Earplug into their ears. [Amended Complaint ¶170]

- The instructions specifically stated: "INSERT the end you have selected into earcanal WHILE PULLING ear outward & upward with opposite hand. ADJUST until earplug feels securely seated in the ear canal." [Amended Complaint ¶171]

- Thus, neither Plaintiff nor the United States military knew that users had to fold back the opposing flanges of the earplug in order to obtain a proper seal. [Amended Complaint ¶172]

As these excerpts illustrate, it is abundantly clear that Plaintiff's Amended Complaint adequately pled facts establishing a duty owed by Defendant to Plaintiff. *E.g., Bombardier Aerospace Corp.*, 572 S.W.3d at 220 *Brown & Brown of Tex., Inc.*, 317 S.W.3d at 384; *BP Am. Prod. Co.*, 288 S.W.3d at 444-46; *Solutioneers Consulting, Ltd.*, 237 S.W.3d at 385-87; *Lesikar*, 33 S.W.3d at 299.

### 3.   The Texas DTPA does <u>Not</u> Bar Plaintiff's DTPA Personal Injury Claim,   Which Should Stand

Defendants misread the Texas DTPA, claiming that it does not apply to personal injury claims, and citing a litany of unpublished cases in purported support.  In fact, every case Defendants cite regarding the Texas DTPA is unpublished, and most of which were not even from Texas State Courts.  Defendants have zero published cases to rely on.  Published cases from Texas State Courts, including the Texas Supreme Court run directly contrary to

Defendants' interpretation of the law.

Subsection 17.49(e) of the DTPA provides that "[e]xcept as specifically provided by Subsections (b) and (h), Section 17.50, nothing in this subchapter shall apply to a cause of action for bodily injury or death or for the infliction of mental anguish." Tex. Bus. & Com. Code § 17.49(e). Yet the Texas DTPA clearly does provide relief for personal injury claims. A personal injury claim is within the scope of the Texas DTPA, provided it is within the provisions of section 17.50(b) or (h). Tex. Bus. & Com. Code §§17.50(b), (h).Put another way, only claims outside of section 17.50(b) and (h) are exempt from the Texas DTPA. *Id.* Sections 17.50(b) and (h) are the only remedial/damages provisions in the DTPA. *Id*. So the proper reading of the statute is that it clarifies that recoverable damages arising out of a personal injury claim under the DTPA are limited to those damages specifically authorized by the DTPA. Section 17.50(b) is the general damage provision of the DTPA, while 17.50(h) is the damage provision for "tie-in statutes". *Id*. Section 17.50(b) allows damages for economic damages and mental anguish. Tex. Bus. & Com. Code §17.50(b).

The published Texas case law shows that personal injury claims and damages are available under the Texas DTPA. *Hurst v. Sears, Roebuck & Co*., 647 S.W.2d 249 (Tex. 1983) (The Texas Supreme Court allowed $10,000 in personal injury/physical pain and suffering as part of the damages in a DTPA

claim that was <u>not</u> based on a tie-in statute); *Keller Industries, Inc. v. Reeves*, 656 S.W.2d 221 (Tex.App.—Austin 1983, writ ref'd n.r.e.) (Personal injury claims and damages are available under the Texas DTPA, including for DTPA claims <u>not</u> based on a tie-in statute). Further, a portion of the damages Plaintiff seeks are "economic" damages, which are clearly within the written purview of the Texas DTPA. Tex. Bus. & Com. Code §17.50(b).

**4.    Plaintiff More Than Adequately Pled Reliance, Therefore Counts VII, VIII, IX, and X, All of Which Concern Misrepresentation, Should Stand.**

Defendants argue that Plaintiff's negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, and fraud and deceit[5] claims (Counts VII–X) should be dismissed for <u>failure to plausibly plead reliance</u>. Defendants mistakenly argue that Plaintiff has not alleged facts tending to show that he actually relied on Defendants' misrepresentations, or that he took an action or failed to take an action on the basis of Defendants' misrepresentations.

Defendants overlook Plaintiff's clear pleadings. In each cause of action, Plaintiff incorporates by reference all paragraphs above and below in the Amended Complaint as if fully stated therein. Among these incorporated paragraphs are:

-       The Dual-Ended Combat Arms Earplug did not warn or instruct that it allows harmful sounds to bypass the earplug, thereby posing a serious risk.   [Amended Complaint ¶302].

-       Defendants also breached their duty to Plaintiff because they failed to warn  or instruct that their testing subjects did not follow standard instructions, but rather used a reconfigured method of folding back the opposing flanges       before inserting the device into their ears.  [Amended Complaint ¶303].

-       Defendants also breached their duty to Plaintiff because they failed to warn  or instruct that following Defendants' standard instructions for insertion would not achieve a 22 NRR and would thereby pose a serious risk to Plaintiff.  [Amended Complaint ¶304].

-       Defendants further breached their duty to Plaintiff because they failed to warn or instruct that they had not adequately or properly tested the Dual-Ended Combat Arms Earplug.  [Amended Complaint ¶305].

-       The warnings and instructions of the Dual-Ended Combat Arms Earplug did not provide the amount of information that an ordinary consumer would expect when using the device in a reasonably foreseeable manner. [Amended Complaint ¶306].

-       Had Plaintiff received proper or adequate warnings or instructions as to the risks of using the   Dual-Ended Combat Arms Earplug, including but not limited to instructions directing them to       fold back the opposing flanges       of the device, Plaintiff would have heeded such a warning or instruction. [Amended Complaint ¶307].

-       Defendants' failure to warn of the design defect or risks and dangers of the   Dual- Ended Combat Arms Earplug proximately caused Plaintiff's injuries       and/or sequelae thereto.  [Amended Complaint ¶308].

-       Had Plaintiff received proper or adequate warnings or instructions as to the risks of using the Dual-Ended Combat Arms Earplug, including but not limited to instructions to fold back the opposing flanges, Plaintiff would have heeded the warning and/or instruction. [Amended Complaint ¶330].

-       Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether the Dual-Ended Combat Arms Earplug was of merchantable quality, safe, and effective for its intended use. [Amended Complaint ¶351].

-       In reliance upon these representations, Plaintiff was in fact induced to and did use the Dual-Ended Combat Arms Earplug, thereby sustaining injuries and/or sequelae thereto.  [Amended Complaint ¶337].

-    Plaintiff reasonably relied on facts revealed, which negligently, fraudulently, and/or purposefully did not include facts that Defendants concealed.  (and such facts that Defendants did not conceal are found throughout the Amended Complaint in great detail).   [Amended Complaint ¶389].

-    Plaintiff did in fact rely on and believe Defendants' representations to be true at the time Defendants made the representations.   [Amended Complaint ¶406].

-    Plaintiff was induced to purchase, use, and/or rely on the Dual- Ended Combat Arms Earplug based on Defendants' false representations. [Amended Complaint ¶407]

-    At the time Defendants made these representations, Plaintiff did not know about any safety concerns regarding the Dual-Ended Combat Arms Earplug.  [Amended Complaint ¶408].

-    Plaintiff did not discover the true facts regarding Defendants' false representations; nor could Plaintiff have done so with reasonable diligence.    [Amended Complaint ¶409].

-    Had Plaintiff known the true facts, Plaintiff would not have purchased, used, and/or relied on the Dual-Ended Combat Arms Earplug.  [Amended Complaint ¶410].

The above-listed allegations are facts explicitly pled by Plaintiff tending to show that he actually relied on Defendants' misrepresentations, or that he took an action or failed to take an action on the basis of Defendants' misrepresentations. Therefore, Plaintiff has met the requisite pleading of reliance and Counts VII–X should stand.

**5.    No Response to Unjust Enrichment, Loss of Consortium, and Negligence Per Se.**

After further consideration and analysis of the facts as they have developed, and the law as studied and further analyzed, Plaintiff no longer intends to pursue,

and therefore makes no response to, Defendants' arguments concerning Plaintiff's

Unjust Enrichment and Negligence Per Se claims, and his Loss of Consortium

damages.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court

deny Defendants' Motion to Dismiss, and grant Plaintiff such other and further

relief to which he may be entitled.

DATED: May 29, 2024

Respectfully submitted,

*s/ David G. Gamble*
David G. Gamble, Lead Counsel
Texas State Bar No. 24040946
Law Offices of David G. Gamble, PLLC
2805 Vermont Ct.
Arlington, Texas 76001
Tel.: (214) 288-7667
davidgamblelaw@gmail.com

**Counsel for Plaintiff Brandon Canup**

19

## **CERTIFICATE OF SERVICE**

On this 29th date of May 2024, the undersigned counsel caused a true and correct copy of the foregoing instrument to be served on counsel of record for all Defendants via e-filing and e-mail pursuant to the Federal Rules of Civil Procedure.

*s/ David G. Gamble*