UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: *Canup*, Case No. 8:20-cv-14021 | Judge M. Casey Rodgers Magistrate Judge Hope T. Cannon |

# ORDER

Defendants 3M Company, 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies LLC (collectively, "Defendants") have filed a Motion to Dismiss certain claims brought by Plaintiff Brandon Canup in his Amended Complaint (ECF No. 17). For the reasons below, the Court grants in part and denies in part Defendants' Motion.

## I.     Legal Standard and Background[1]

A Rule 12(b)(6) motion seeks dismissal of a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion, the Court accepts factual allegations as true and construes them in the light most favorable to the plaintiff. *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008). Rule 12(b)(6) requires that the allegations of a Complaint "state a

---

[1] The Court assumes the Parties' familiarity with the general factual allegations and nature of this multidistrict litigation ("MDL").

claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility requirement "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

On June 3, 2020, Canup filed a Short-Form Complaint in the MDL, which he refiled in May 2022. ECF Nos. 1, 4. For both filings, Canup was represented by Gregory D. Brown of Fleming Nolen & Jez, LLP. In these Short-Form Complaints, Canup asserted fifteen causes of action under Texas law[2] arising from injuries he alleges were caused by his use of the Combat Arms Earplug version 2 ("CAEv2") during his military service. *Id.* at 4–5; ECF No. 11. Notably, in these Complaints, Canup only checked the box for "Tinnitus" under the "Injuries" section even though "Hearing loss" and "Sequelae to hearing loss" were also listed options. ECF Nos. 1, 4 at 3.

After a global settlement was reached in the MDL between Plaintiff's leadership and Defendants, Canup decided he would not participate in the settlement program and

---

[2] The Parties do not appear to dispute that Texas law applies to Canup's claims. *See* ECF Nos. 11 at 1, 24 at 2 n.1.

instead would continue litigating against Defendants. At this point, Canup's then-counsel, Fleming Nolen & Jez, LLP, withdrew and his current counsel, David G. Gamble of the Law Offices of David G. Gamble, PLLC, appeared on Canup's behalf. *See* ECF Nos. 9 & 10. The Court subsequently ordered Canup to file an individualized Long-Form Complaint (hereinafter "Amended Complaint"), but in the Order expressly cautioned Canup that he could not use the opportunity to add new causes of action or allegations against Defendants. ECF No. 15 at 2. Notwithstanding this admonition, Canup's Amended Complaint included new claims and allegations. More specifically, the Amended Complaint added a new cause of action for "loss of consortium" under Texas law, and included new allegations of hearing loss. *See* ECF No. 17; *see also* ECF No. 11.[3] Defendants have moved to dismiss or strike certain of Canup's "new" claims for violating the Court's Order requiring a Long-Form Complaint, because that Order prohibited new causes of action and/or new allegations. ECF No. 24 at 3–7. Defendants have also moved to dismiss certain claims that appeared in the Short-Form Complaints and were refiled in the Long-Form Complaint, specifically, breach of warranty (Counts V–VI), fraudulent concealment (Count IX), negligence per se (Count

---

[3] Specifically, Canup now raises claims for Design Defect – Negligence (Count I), Design Defect – Strict Liability (Count II), Failure to Warn – Negligence (Count III), Failure to Warn – Strict Liability (Count IV), Breach of Express Warranty (Count V), Breach of Implied Warranties (Count VI), Negligent Misrepresentation (Count VII), Fraudulent Misrepresentation (Count VIII), Fraudulent Concealment (Count IX), Fraud and Deceit (Count X), Gross Negligence (Count XI), Negligence Per Se (Count XII), Consumer Fraud and/or Unfair Trade (Count XIII), Loss of Consortium (Count XIV), Unjust Enrichment (Count XV), and Punitive Damages (Count XVI).

XII), deceptive trade practices (Count XIII), unjust enrichment (Count XV), and misrepresentation-based claims (Counts VII–X), as well as his newly filed loss of consortium claim (Count XIV), for failure to state a claim.  In response, Canup withdrew his unjust enrichment, loss of consortium, and negligence per se claims.  ECF No. 26 at 18–19.  He opposes the remaining defense arguments; however, he omits any argument responding to Defendants' motion to dismiss the warranty claims.

## II.  Analysis

### A. Plaintiff's Hearing Loss-Related Claims

Defendants first challenge Canup's newly identified hearing loss-related claims.  As noted, when the Court ordered Canup to file a Long-Form Complaint, it advised that he may not "use this opportunity to add new allegations or causes of action to [his] Complaint[]."[4]  ECF No. 15 at 2.  Defendants argue "that is precisely what Plaintiff did, improperly alleging for the first time [] hearing loss." ECF No. 24 at 3.  Defendants ask the Court to dismiss Canup's hearing loss-related claims for violating the Court's Order and Fed. R. Civ. P. 15(a)(2), and to strike all references to those claims from his Amended Complaint.  ECF No. 24 at 4, 6.

---

[4] When the Court entered this order, it did so with the understanding that Canup was capably represented at the time his two Short-Form Complaints were filed, nearly four and two years earlier, respectively, and during that time there had never been any request to file an amended complaint to add claims for hearing loss.  And notably, even now, Canup's existing counsel has never sought leave to amend the complaints to add hearing loss claims.

Canup argues that "facts concerning hearing loss . . . do not amount to new 'claims.'" ECF No. 26 at 8. Even though his original Complaints did not check the boxes for hearing loss injuries, Canup also asserts that "[b]ecause Defendants admittedly already had notice of the hearing loss allegations and damages" through the disclosures required under Case Management Order 57, "the further description of Plaintiff's hearing loss in the Amended Complaint cannot rightfully [be] considered a 'new allegation.'" ECF No. 26 at 8–9. Regarding Defendants' Rule 15 argument, Canup argues he had leave from the Court to amend. *Id.* at 9. Finally, Canup states that he was not certain of whether to assert a hearing loss claim until recently because, while he "had known that there was a slight shift in his hearing threshold, he was not certain of the details" and "whether a certain decibal [sic] amount of hearing loss was required;" and his injury was in the domain of experts. *Id.*

The hearing loss allegations added to the Amended Complaint add new claims, plain and simple. While Canup correctly states that some additions pertaining to hearing loss are pure facts (e.g., ECF No. 17 at ¶ 200: "hearing loss can be caused by a one-time exposure to hazardous impulse noise"), these factual additions regarding hearing loss only make sense in relation to the claims of hearing loss that he added (e.g., *id.* at ¶ 276 (Regarding Count I for Design Defect—Negligence: "As a direct and proximate result of Defendants' negligence, Plaintiff suffered serious and dangerous injuries and/or sequelae thereto, including but not limited to hearing loss . . . .")).

These additions within his various causes of action support new claims seeking relief for new injuries under Fed. R. Civ. P. 8 and were included in direct contravention of the Court's order.  *See, e.g.*, 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1249 (4th ed.) ("The traditional elements of a claim for negligence" include "the injury to the plaintiff that results from" breach of duty "together with a statement of the resulting damage.").  Because the Court expressly precluded Canup from adding these new allegations and causes of action, *all* of Canup's hearing loss-related claims are hereby dismissed and *all* references thereto are stricken from his Amended Complaint.

### B. Breaches of Express and Implied Warranties

Defendants next argue that Canup's warranty claims (Counts V and VI) should be dismissed for his failure to provide pre-suit notice.  ECF No. 24 at 7–9.  Canup does not address Defendants' argument in his Opposition briefing.  Thus, the Court deems these claims abandoned.  *See GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1311 n.7 (S.D. Fla. 2017) ("When a party fails to respond to an argument or address a claim in a responsive brief, such argument or claim can be deemed abandoned."); *Guzman v. City of Hialeah*, 2016 WL 3763055, at *3 (S.D. Fla. July 14, 2016) ("A plaintiff who, in her responsive brief, fails to address her obligation to object to a point raised by the defendant implicitly concedes that point."); *see also Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th

Cir. 2000) (summarizing another Eleventh Circuit case as finding "a claim may be considered abandoned when the allegation is included in the plaintiff's complaint, but he fails to present any argument concerning this claim to the district court"); *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (finding "party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed" at summary judgment (quoting *Kramer v. Gwinnett Cnty., Ga.*, 306 F.Supp.2d 1219, 1221 (N.D. Ga. 2004)); *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 679 F. Supp. 3d 1314, 1322 n.4 (N.D. Fla. 2023) (granting summary judgment on implied warranty of fitness for a particular purpose claim that was abandoned when plaintiff's response to summary judgment motion devoid of any argument regarding that claim).

### C. Fraudulent Concealment

Defendants also challenge Canup's claim for fraudulent concealment, arguing that his failure to allege that Defendants owed any duty to Canup is fatal. ECF No. 24 at 10. In support, Defendants cite to this Court's decision in an earlier MDL case involving Texas law, *Camarillorazo*, where it concluded there is no "Texas case recognizing a duty to disclose when the plaintiff and defendant have not had any interactions." *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2021 WL 6882666, at *3 (N.D. Fla. Oct. 26, 2021); ECF No. 24 at 9–10. Canup does not directly address this argument, instead asserting that his pleading adequately states a duty because it

includes allegations regarding each of the three *Bombardier* scenarios[5] for when a duty to disclose may arise outside of a confidential or fiduciary relationship. ECF No. 26 at 10–14 (citing *Bombardier Aerospace Corp. v. SPEP Aircraft, LLC*, 572 S.W. 3d 213, 220 (Tex. 2019)).

Canup's analysis is flawed because it skips the first step of this Court's analysis regarding party interaction in *Camarillorazo*. As the Court previously concluded, the duty to disclose under *Bombardier* was only recognized "in an arm's length business transaction where the plaintiff and defendant dealt directly with one another," and the Texas Supreme Court did not rule "on whether the three scenarios apply to parties who have never interacted with one another." *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2021 WL 6882666, at *2. Canup cites no law to change the Court's prior analysis on this issue. Accordingly, the Court sees no reason to depart from it and, therefore, because Canup has not plausibly alleged that he had a fiduciary or confidential relationship with Defendants, that he was a party to a transaction with the Defendants, or that he received information from Defendants *directly*,[6] he fails to state a claim for fraudulent concealment under Texas law as a matter of law.

---

[5] The three *Bombardier* scenarios are when a defendant "(1) discovered new information that made its earlier representation untrue or misleading; (2) made a partial disclosure that created a false impression, or (3) voluntarily disclosed some information, creating a duty to disclose the whole truth." *Bombardier Aerospace Corp. v. SPEP Aircraft, LLC*, 572 S.W. 3d 213, 220 (Tex. 2019).

[6] While Canup includes some broad allegations indicating that he *could* have purchased the CAEv2 (e.g., ECF No. 17 at ¶ 161 ("This was one alleged benefit that Plaintiff and the United States military relied on in purchasing and/or using the Dual-Ended Combat Arms Earplug.")), he never

**D. Texas Deceptive Trade Practices Act**

Defendants next assert that Canup's claim under Texas's Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.41 *et seq.* ("DTPA"), must fail because the Act does not apply to personal injury claims. ECF No. 24 at 11. Their argument hinges on Section 17.49(e) of the Act, which provides: "[e]xcept as specifically provided by Subsections (b) and (h), Section 17.50, nothing in this subchapter shall apply to a cause of action for bodily injury or death or for the infliction of mental anguish." Defendants argue the two exceptions for "Subsections (b) and (h)" are inapplicable because Subsection (b) "merely expands the scope of damages available in non-personal injury cases," and Subsection (h) pertains only to DTPA claims brought under a tie-in statute (inapplicable here). ECF No. 24 at 12. Defendants do acknowledge that a few courts "have found [that] the DTPA allows personal injury claims," though. ECF No. 24 at 13 n.4. Defendants ask that should the Court find those cases persuasive, it "dismiss any DTPA claims tied to non-economic damages." *Id.* In response, Canup states that "the Texas DTPA clearly does provide relief for personal injury claims." ECF No. 26 at 15. However, he recognizes that there is some limitation to personal injury claims

---

explicitly alleges that he purchased the products from or transacted business with Defendants directly. *See id.* at ¶ 14 (alleging use only as issued from military). Instead, the Complaint only plausibly alleges the U.S. Military purchased the earplugs issued to Canup. *See, e.g., id.* ¶¶ 9, 48.

under the statute, as these claims can only be brought for "economic damages and mental anguish" under 17.50(b), and under tie-in statutes for 17.50(h). *Id.*

"It does not appear that the Texas Supreme Court[7] or the Fifth Circuit have ever considered Section 17.49(e), let alone whether that Section permits plaintiffs with DTPA claims involving personal injury to recover damages for medical expenses, lost wages, and mental anguish." *Perez v. Am. Med. Sys. Inc.*, 461 F. Supp. 3d 488, 498 (W.D. Tex. 2020). When a dispositive issue cannot be resolved by a final decision of the Texas Supreme Court, then this Court sitting in diversity "must make an '*Erie*-guess,'" predicting how the Texas Supreme Court would rule. *Hodges v. Mack Truck, Inc.*, 474 F.3d 188, 199 (5th Cir. 2006) (citing *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382 (5th Cir. 1998)). In making this prediction, the Court looks first to Texas Supreme Court decisions in analogous cases. *See Hodges*, 474 F.3d at 199 (listing the sources to base an *Erie* guess in order of importance). If the issue still cannot be resolved, the Court must "defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state

---

[7] Canup cites to Texas Supreme Court cases in support of his position that "[t]he published Texas case law shows that personal injury claims and damages are available under the Texas DTPA." ECF No. 26 at 15–16. These cases are not analogous, however, because they pre-date the 1995 amendments to the DTPA, which added "provisions intended to . . . exclude from the DTPA the ambit of personal injury litigation," including Section 17.49(e). *See* Bivins et al., *The 1995 Revisions to the DTPA: Altering the Landscape*, 27 Tex. Tech. L. Rev. 1441, 1448 (1996). Thus, there is still an absence of Texas Supreme Court decision-making on the significance of Section 17.49(e) to DTPA claims involving personal injury.

would decide otherwise." *Temple v. McCall*, 720 F.3d 301, 307 (5th Cir. 2013) (quoting *Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland*, 524 F.3d 676, 678 (5th Cir. 2008)). Rulings from other district courts may also be persuasive "to the extent they are well-reasoned and on point." *Buzek v. Pepsi Bottling Grp., Inc.*, 501 F. Supp. 2d 876, 885 (S.D. Tex. 2007).

Here, "the approaches of lower courts—both state and federal—have been divergent." *Perez*, 461 F. Supp. 3d at 502.[8] After reviewing these decisions, this Court concludes that the most persuasive view of the DTPA on this issue is found in the Texas Court of Appeals case, *Last v. Quail Valley Country Club, L.P.*, which determined that "the DTPA does not provide a cause of action for personal injury claims." 2010 WL 1253782, at *7 (Tex. App. Mar. 25, 2010). This conclusion best gives meaning to Section 17.49(e)'s directive that "nothing in this subchapter shall apply to a cause of action for bodily injury or death or for the infliction of mental anguish." It follows naturally that any claim for personal injury is "presumptively not allowed under Section 17.49(e)." *Roberts v. Zev Techs., Inc.*, 2015 WL 7454688, at *5 (W.D. Tex. Nov. 23, 2015).

---

[8] *Compare Roberts v. Zev Techs., Inc.*, 2015 WL 7454688, at *5–7 (W.D. Tex. Nov. 23, 2015); *Huynh v. Wal-Mart Stores Tex., LLC*, 2019 WL 2931573, at *5 (S.D. Tex. June 17, 2019); *Drake v. Penske Truck Leasing Co., LP*, 2013 WL 1313697, at *7–8 (E.D. Tex. Feb. 21, 2013); *Last v. Quail Valley Country Club, L.P.*, 2010 WL 1253782, at *7 (Tex. App. Mar. 25, 2010) *with Lea v. Wyeth LLC*, 2011 WL 13192701, at *18–19 (E.D. Tex. Oct. 28, 2011); *Akin v. Bally Total Fitness Corp.*, 2007 WL 475406, at *3–4 (Tex. App. Feb. 14, 2007); *Perez*, 461 F. Supp at 502. *See also Perez*, 461 F. Supp at 502 n.5 (collecting additional commentary).

The remaining, thornier "question for the Court is in what manner and to what degree does Section 17.50(b) create a specific exception to Section 17.49(e)." *Id.* at *6.[9] As relevant here, 17.50(b) states:

> (b) In a suit filed under this section, each consumer who prevails may obtain: (1) the amount of economic damages found by the trier of fact. If the trier of fact finds that the conduct of the defendant was committed knowingly, the consumer may also recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of economic damages; or if the trier of fact finds the conduct was committed intentionally, the consumer may recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of damages for mental anguish and economic damages . . . .

Tex. Bus. & Com. Code Ann. § 17.50(b). As the Western District of Texas in *Roberts* explained, "Section 17.50(b) states the general rule as to what damages are available to successful DTPA plaintiffs." 2015 WL 7454688, at *6.

Canup argues, however, that, even for a personal injury-based claim, economic and mental anguish damages under Section 17.50(b) are recoverable. ECF No. 26 at 15. The Court disagrees. Canup's position "treats a personal injury claimant no differently than any other DTPA claimant." *Roberts*, 2015 WL 7454688, at *6. The undersigned agrees with the *Roberts* court that "[s]uch a reading renders Section

---

[9] Again, while there is also an exception under 12.50(h), no party argues that tie-in exception applies here, and the Court focuses its analysis on 12.50(b) accordingly.

17.49(e)'s bar on relief for personal injury meaningless." *Id.* On this point, the Texas Court of Appeals in *Last* cites to a law review article (hereinafter, "Bivins article") authored by several legislators who sponsored the Bill adding Section 17.49(e) to the DTPA. *See Last*, 2010 WL 1253782, at *7 (citing Bivins et al., *The 1995 Revisions to the DTPA: Altering the Landscape*, 27 Tex. Tech. L. Rev. 1441, 1448 (1996)). The Bivins article makes clear that it was *not* the drafters' intent to use the DTPA's exceptions to shoehorn in economic damages for personal injury cases. 27 Tex. Tech. L. Rev. at 1449 n.37. Instead, drafters were concerned that "[t]he DTPA had become an avenue for far too many lawsuits relating to a variety of claims outside of the consumer-business relationship, including personal injury litigation." *Id.* at 1448. The exception under (b) was meant to allow *a consumer plaintiff* (i.e., as distinct from a personal injury plaintiff) to "still recover damages for mental anguish under the amended DTPA" under specific circumstances, even if there was no independent cause of action for mental anguish. *See id.* at 1448–49.

Accordingly, to determine whether a DTPA cause of action is available, the Court asks if the gravamen of Canup's claims is in personal injury, *see Last*, 2010 WL 1253782, at *7 ("The Lasts allege that Robert sustained personal injuries when he was thrown from the mechanical bull; thus the Lasts' claim is a personal injury claim."), and the answer to that question is an easy, "yes." As for the exceptions, Canup has not asserted a tie-in statute to meet 17.50(h), and his sole claims rooted in personal injuries

do not open the door for damages under (b). The Court believes that the Texas Supreme Court would also follow this analytical framework to conclude that Canup's DTPA claim should be dismissed because the analysis is faithful to the express legislative text and its history.

The Court is not persuaded by the logic of the courts concluding the DTPA provides relief for personal injury claims. First, while *Akin* is also a Texas appellate court decision, the Court finds its implicit expansion of the exception to 17.49(e) to include 17.50(a) (alongside (b)) unconvincing. *See Akin v. Bally Total Fitness Corp.*, 2007 WL 475406, at *3 (Tex. App. Feb. 14, 2007). In that case, the plaintiff's father died in a swimming pool, and the plaintiff sought "damages for lost wages and mental anguish resulting from the breach of an implied warranty and unconscionable action or course of action by [defendant]." *Id.* at *4. The court allowed those damages, which it said "f[e]ll within the exceptions to the DTPA's bar on claims under the DTPA for damages for death, bodily injury, and mental anguish." *Id.* In doing so, it said 17.50(a) was a "relevant part" of analyzing the exception under 17.49(e). *Id.* at *3. A claim under Section (a) includes, among others, actions for breach of warranty or "unconscionable action or course of action by any person," as the plaintiff asserted in that case.

The undersigned, respectfully, finds that *Akin* reads the exception too broadly. Section 17.49(e) on its face does not say that Section (a) of 17.50 is an exception to the

prohibition on causes of action for bodily injury or mental anguish. Moreover, Section (a) is clear that it permits causes of action like breach of warranty that may be "*a producing cause* of … damages for mental anguish"—not that mental anguish is itself a cause of action. (Emphasis added.) Instead, the excepted Section (b) addresses the availability of damages from mental anguish as they are derivative of the causes of action "[i]n a suit filed under" Section 17.50(a), which is still subject to the limitations on personal injury claims under 17.49(e).

The *Akin* court's reading is also contrary to the legislative intent of the DTPA's drafters. The Bivins article addresses a similar set of facts as a hypothetical: "in theory it is possible for an individual who has sustained personal injuries to be able to maintain a traditional tort suit to recover for those personal injuries, and also pursue causes of action under the DTPA for economic losses, if any, arising from the same incident." 27 Tex. Tech. L. Rev. at 1449 n.37. However, this hypothetical "goes beyond the bill sponsors' intent," which did not include "allow[ing] traditional components of a personal injury claim to be reclassified as economic losses." *Id.* Instead, a plaintiff "can still seek relief through other traditional forms of action such as negligence[] [and] strict products liability"—as Canup does. *Id.* at 1449. Accordingly, the Court does not find *Akin* more persuasive than *Last*.

The undersigned also, respectfully, disagrees with the conclusions of the Western District of Texas in *Perez*. Most notably, this Court does not agree with *Perez*'s criticism of *Roberts*'s reading of Sections 17.49 and 17.50:

> [B]ecause Subsection (b) already provides that mental anguish damages are only recoverable on a showing of knowing or intentional conduct, there is no need to include Section 17.49(e) to say that mental anguish damages are not recoverable, except as provided by Subsection (b). Subsection (b) does that work itself. Under either interpretation—the one adopted or the one disavowed by the *Roberts* court—the interplay of Section 17.49(e) and Subsection (b) undoubtedly results in some redundancy. The *Roberts* court does not provide a convincing explanation for permitting a redundant or "meaningless" interpretation of the interaction between Section 17.49(e) and Subsection (b) with respect to the exclusion of claims for mental anguish, but not the exclusion of claims for bodily injury. The *Roberts* court's reason for limiting the Subsection (b) exception to only non-injury mental anguish claims is logically inconsistent and thus unpersuasive.

461 F. Supp. 3d at 505. While there is some circularity to *Roberts*'s logic, the undersigned is more persuaded that 17.49(e) clarifies "the scope of damages available in non-personal injury cases," as Defendants argue in citing to *Roberts*. *See* ECF No. 24 at 12. In other words, this Court is skeptical that subsection (b) would stand on its own to do the work of providing for mental anguish damages in some instances without the clarification that there is not a conflict with 17.49(e)'s presumption against personal injury claims.

Based on the foregoing analysis, the Court dismisses Count XIII (Consumer Fraud and/or Unfair and Deceptive Trade Practices under State Law) of Canup's Amended Complaint.

### E. Misrepresentation-Related Claims

Defendants conclude their Motion by arguing that Canup's misrepresentation-related claims[10] should each be dismissed for failure to adequately plead reliance. Defendants assert that "[e]ven where misrepresentations are alleged to have been made to third parties, the plaintiff still must have actually relied on the misrepresentation," and "Plaintiff has not alleged facts tending to show that he actually relied on any alleged misrepresentation by Defendants." ECF No. 24 at 15. Defendants provide the example that Canup does not include facts showing "he would not have used CAEv2 but for [] alleged [material] misrepresentations." *Id.* at 16. Canup opposes by enumerating several paragraphs in his Amended Complaint that he purports provide the factual basis for his reliance. ECF No. 26 at 17–18.

At the pleading stage, the Court declines to dismiss Canup's misrepresentation-related claims. Canup alleges that he, alongside the U.S. military and others, relied on Defendants' representations, including the following:

- Civilians and military personnel, including Plaintiff, relied on Defendants' representations that the Dual-Ended Combat Arms Earplug

---

[10] Specifically, Negligent Misrepresentation (Count VII), Fraudulent Misrepresentation (Count VIII), Fraudulent Concealment (Count IX), Fraud and Deceit (Count X).

- is safe, effective, and provides two different options for adequate hearing attenuation and/or protection depending upon which end of the device is inserted into the user's ear. (¶ 57)

- Defendants thus falsely represented that the Dual-Ended Combat Arms Earplug provided civilians and military personnel with two different hearing protection options for providing adequate hearing protection regardless of which end of the plug is used. [] This was one alleged benefit that Plaintiff and the United States military relied on in purchasing and/or using the Dual-Ended Combat Arms Earplug. (¶¶ 160–61)

- Had Plaintiff known the true facts, Plaintiff would not have purchased, used, and/or relied on the Dual-Ended Combat Arms Earplug. (¶ 410; *see also* ¶¶ 395, 403 (preceding allegations in Fraud and Deceit claim regarding safety misrepresentations))

While not repeated across every cause of action, Canup's allegations taken together are enough at this stage to plead plausibly that he relied on the Defendants' representations regarding the safety and adequacy of the CAEv2, particularly because of its dual-ended features. *See In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2021 WL 9031165, at *4 (N.D. Fla. Dec. 4, 2021) (On motion for summary judgment, Plaintiff "Stelling's statements make clear that he relied on the safety and efficacy of the CAEv2 in protecting him from hearing injury" where, during discovery, specified, "'I relied upon statements about the CAEv2 including that it provided complete protection and that it allowed users to maintain situational awareness.'"). In particular, Canup's allegation that he would not have relied on or used the CAEv2 had he known about certain alleged safety and testing issues contradicts Defendants' assertion that he failed to allege that

he did not act because of an alleged misrepresentation. Defendants' motion to dismiss for failure to plead reliance, therefore, is denied as to Counts VII, VIII, and X.[11]

### III. Conclusion

Defendants' Motion to Dismiss, ECF No. 24, is **GRANTED in PART** and **DENIED in PART**. Defendants' Motion is **GRANTED** as to Canup's Breach of Express Warranty and Breach of Implied Warranty claims (Counts V and VI), Fraudulent Concealment claim (Count IX), and Consumer Fraud and/or Unfair and Deceptive Trade Practices Under State Law claim (Count XIII); each of these claims is **DISMISSED WITH PREJUDICE**. The Court also **GRANTS** Defendants' Motion regarding Canup's improperly added hearing loss-related claims, which are hereby **DISMISSED** and **STRICKEN** from his Amended Complaint. Defendants' Motion is otherwise **DENIED**.[12]

**SO ORDERED**, on this 18th day of July, 2024.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

[11] For the reasons above, the Court dismisses Count IX for Fraudulent Concealment on other grounds.

[12] Again, the Court notes that Canup has voluntarily withdrawn his claims for unjust enrichment (Count XV), loss of consortium (Count XIV), and negligence per se (Count XII). Thus, the claims remaining in this matter are: Design Defect – Negligence (Count I), Design Defect – Strict Liability (Count II), Failure to Warn – Negligence (Count III), Failure to Warn – Strict Liability (Count IV), Negligent Misrepresentation (Count VII), Fraudulent Misrepresentation (Count VIII), Fraud and Deceit (Count X), Gross Negligence (Count XI), and Punitive Damages (Count XVI). Canup's injury claims are limited to tinnitus.